GOLD BOND ICE CREAM OF FLORIDA, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; WESTERN LANES, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gold Bond Ice Cream, Inc. v. Commissioner
Docket Nos. 16578-79, 16579-79.
United States Tax Court
T.C. Memo 1982-54; 1982 Tax Ct. Memo LEXIS 689; 43 T.C.M. (CCH) 458; T.C.M. (RIA) 82054; February 9, 1982. *689 To determine whether the 80-percent test of sec. 1563(a)(2)(A), I.R.C. 1954, was satisfied, respondent included in his calculations the stock of a shareholder who did not own stock in all of the corporations in the alleged controlled group. Held, consideration of stock of one who does not own stock in each of the members of a group of corporations is improper for purposes of applying the 80-percent test of sec. 1563(a)(2)(A), I.R.C. 1954. United States v. Vogel Fertilizer Co., 455 U.S.     (Jan. 13, 1982), controls. Robert E. Nelson,Brian R. Mudd and Michael D. Willis, for the petitioners. Joseph R. Peters, for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Judge: In these consolidated cases, respondent determined the following deficiencies in petitioners' Federal income taxes: Taxable year
Docket No.
Petitioner
ended June 30,
Deficiency
16578-79
Gold Bond Ice Cream
1977
$ 13,106.16
of Florida, Inc.
1978
13,500.00
16579-79
Western Lanes, Inc.
1974
11,536.45
1976
13,057.95
1977
1,963.55
1978
17,345.13
The issues for decision are (1) whether petitioners were members of a controlled group of corporations, as that term is defined under section 1563(a)(2), I.R.C. 1954, during the taxable years in issue; and (2) whether Thomas J. Lutsey made a valid gift of 20 shares of Western Lanes, Inc. stock to his mother on July 12, 1977, or whether the gift was made when the stock certificates were issued to her by the corporation in February 1979. [1]
*692 FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner Western Lanes, Inc. (hereinafter Western Lanes) was incorporated under the laws of Wisconsin. At the time of filing the petition herein, its principal place of business was located in Green Bay, Wisconsin. It filed its Federal corporate income tax returns for its taxable years ended June 30, 1974, 1976, 1977 and 1978 with the Internal Revenue Service Center, Kansas City, Missouri. Petitioner Gold Bond Ice Cream of Florida, Inc. (hereinafter Gold Bond of Florida) was incorporated on July 1, 1976 under the laws of Florida. At the time of filing the petition herein, its principal place of business was located in Ocala, Florida. It filed its Federal corporate income tax returns for its taxable years ended June 30, 1977 and June 30, 1978 with the Internal Revenue Service Center, Atlanta, Georgia. On its corporate income tax return for the year ended June 30, 1974, Western Lanes utilized its entire $ 25,000 surtax exemption. On its returns for the years ended June 30, 1976, 1977 and 1978, Western Lanes *693 utilized surtax exemptions of $ 44,046.46, $ 49,064.65 and $ 50,000, respectively. On its corporate income tax returns for the years ended June 30, 1977 and June 30, 1978, Gold Bond of Florida utilized surtax exemptions of $ 48,485.20 and $ 50,000, respectively. Assuming that a valid gift of 20 shares of Western Lanes stock was not made by Mr. Thomas J. Lutsey to his mother Evelyn Lutsey on July 12, 1977, the stock of the two petitioner corporations and of Gold Bond Ice Cream of Green Bay, Inc. (hereinafter Gold Bond of Green Bay) on June 30, 1976, 1977 and 1978 was held as follows: Western
Gold Bond
Gold Bond
Individuals
Lanes
Green Bay
Florida
Identical
Thomas J. Lutsey
56.67
66.67
70
56.67
Craig H. Cebert
34.17
Thomas H. Lutsey
33.33
Kenneth Hannon
15
90.84
100.00
85
56.67
By notice of deficiency dated September 4, 1979, respondent determined that Western Lanes was a member of a controlled group of brother-sister corporations during the years 1976, 1977 and 1978. Based on Western Lanes' election to allocate the entire surtax exemption to Gold Bond of Green Bay, respondent disallowed the exemption in its entirety for *694 the 3 years in question. The deficiency for the year ended June 30, 1976 was wholly attributable to the disallowance of the surtax exemption, as was the deficiency for June 30, 1977. For 1977, the increased tax liability generated by the disallowance of the separate surtax exemption allowed for additional absorption of investment tax credit available for that year. As a result, a deficiency for the year ended June 30, 1974 arose from the loss of the investment tax credit which originally had been carried back to that year from the year ended June 30, 1977. The deficiency for June 30, 1978 was attributable to the disallowance of the surtax exemption and to the reduced limitation on the jobs tax credit under section 51 as limited by section 52(a). [2]
*695 By notice of deficiency dated September 4, 1979, respondent determined that Gold Bond of Florida was a member of a controlled group of brother-sister corporations during the years 1977 and 1978.Based on Gold Bond of Florida's election to allocate the entire surtax exemption to Gold Bond of Green Bay, respondent disallowed the exemption in its entirety for the 2 years in question. The deficiencies are wholly attributable to such disallowance. The issue before us is whether petitioners are members of a brother-sister controlled group of corporations within the meaning of section 1563(a)(2). Section 1563(a)(2) provides: SEC. 1563. DEFINITIONS AND SPECIAL RULES. (a) Controlled Group of Corporations.--For purposes of this part, the term "controlled group of corporations" means any group of-- (2) Brother-sister controlled group.--Two or more corporations if 5 or fewer persons who are individuals, estates, or trusts own (within the meaning of subsection (d)(2)) stock possessing-- (A) at least 80 percent of the total combined voting power of all classes of stock entitled to vote or at least 80 percent of the total value of shares of all classes of the stock of each corporation, *696 and (B) more than 50 percent of the total combined voting power of all classes of stock entitled to vote or more than 50 percent of the total value of shares of all classes of stock of each corporation, taking into account the stock ownership of each such person only to the extent such stock ownership is identical with respect to each such corporation. Assuming that Thomas Lutsey did not make a valid gift to Evelyn Lutsey on July 12, 1977, the 50-percent "identical ownership" test of section 1563(a)(2)(B) is met since Thomas Lutsey owned over 50 percent of the stock in each of the three corporations during the years in question. Accordingly, in order to determine if a brothersister controlled group existed, we must determine whether, under section 1563(a)(2)(A), an individual's stock ownership may be considered for purposes of determining 80-percent ownership even though such individual does not own stock in each of the corporations in the controlled group. The controversy thus resolves down to whether the three shareholders who did not own stock in all three of the corporations should be included in the computation of the 80-percent stock ownership test in order to conclude *697 that the three corporations were members of a controlled group of brother-sister corporations during the years in question. Petitioners rely on our decisions in Fairfax Auto Parts of No. Va., Inc. v. Commissioner,65 T.C. 798 (1976), revd. and remanded 548 F.2d 501 (4th Cir. 1977), cert. denied 434 U.S. 904 (1977), and Charles Baloian Co. v. Commissioner,68 T.C. 620 (1977), on appeal (9th Cir. Apr. 7, 1978). They argue that an individual's stock cannot be considered in making the 80-percent determination unless that individual owns stock in each of the corporations alleged to be members of the controlled group. Petitioners therefore contend that they are not members of a controlled group of corporations as defined by section 1563(a)(2) and that each of them is entitled to a full surtax exemption under section 11(d) in computing its respective income tax liability for the years in question. Respondent relies on section 1.1563-1 (a)(3)(i) and (ii), [3] Income Tax Regs., in arguing that there is no common ownership requirement. He contends that this Court's decisions in Fairfax Auto Parts of No. Va., Inc. v. Commissioner, *698 supra, and its progeny were erroneous and that the regulation is valid. *699 The issue raised herein has been resolved by the Supreme Court in the recent case of United States v. Vogel Fertilizer Co., 455 U.S.     (Jan. 13, 1982), where it was held that the 80-percent statutory test contains a common ownership requirement. Thus, each member of the stockholder group must own stock in each brother-sister corporation for purposes of the 80-percent test. Accordingly, the Court declared section 1.1563-1(a)(3), Income Tax Regs., to be an unreasonable implementation of the statute and therefore invalid to the extent it prescribed otherwise. In affirming the Court of Claims, the Court cited with approval the Tax Court's position as originally expressed in Fairfax Auto Parts of No. Va., Inc. v. Commissioner,supra. Following United States v. Vogel Fertilizer Co.,supra, we held in B & M Investors Corp. v. Commissioner, 78 T.C.     (Jan. 29, 1982), that section 1563(a)(2) had a common ownership requirement. Because we have held that the 80-percent test of section 1563(a)(2)(A) was not met during the years in question, it is unnecessary for us to resolve the second issue, which is only relevant with respect to the 50-percent test *700 of section 1563(a)(2)(B). To reflect the foregoing, Decisions will be entered for the petitioners.
Footnotes
1. This issue need not be decided if it is determined that the 80-percent test under sec. 1563(a)(2)(A) is not satisfied since the gift issue is only relevant in this case to the extent it bears on the application of the 50-percent test under sec. 1563(a)(2)(B)↩. Since both tests must be satisfied, the failure to satisfy one of the tests will make satisfaction of the other test irrelevant.
2. Under sec. 52(a), the jobs tax credit is limited in the case of a "controlled group of corporations." The term carries the same "meaning given to such term by section 1563(a), except that (1) 'more than 50 percent' shall be substituted for 'at least 80 percent'" in sec. 1563(a)(1). In their briefs, both parties failed to recognize that this substitution is not made for purposes of the sec. 1563(a)(2) test. This latter test remains unchanged. Thus, the failure to satisfy sec. 1563(a)(2) will cause the sec. 52(a) limitation to be inapplicable since sec. 1563(a)(1)↩ does not apply.
3. Sec. 1.1563-1, Income Tax Regs., provides in pertinent part: § 1.1563-1. Definition of controlled group or corporations and component members. (a) Controlled group of corporations -- (3) Brother-sister controlled group -- (i) The term "brother-sister controlled group" means two or more corporations if the same five or fewer persons who are individuals, estates, or trusts own (directly and with the application of the rules contained in paragraph (b) of § 1.1563-3), singly or in combination, stock possessing -- (a) At least 80 percent of the total combined voting power of all classes of stock entitled to vote or at least 80 percent of the total value of shares of all classes of the stock of each corporation; and (b) More than 50 percent of the total combined voting power of all classes of stock entitled to vote or more than 50 percent of the total value of shares of all classes of stock of each corporation, taking into account the stock ownership of each such person only to the extent such stock ownership is identical with respect to each such corporation. (ii) The principles of this subparagraph may be illustrated by the following examples: Example (1). The outstanding stock of corporations P, Q, R, S, and T, which have only one class of stock outstanding, is owned by the following unrelated individuals: Identical
Individuals
Corporations
Ownership
P
Q
R
S
T
A
60%
60%
60%
60%
100%
60%
B
40%
C
40%
D
40%
E
40%
Total
100%
100%
100%
100%
100%
60%
Corporations P, Q, R, S, and T are members of a brother-sister controlled group. [Emphasis added.]↩